SPANGLER *et al.* v. YARBOROUGH.

No. 563. Opinion Filed May 12, 1909.

(101 Pac. 1107.

CANCELLATION OF INSTRUMENTS—Contract to Support—Remedy at Law. Abandonment of their contract by defendants to support the plaintiff for life as the consideration for a deed to land from plaintiff to one of defendants entitled the grantor to a cancellation of the deed in equity on the theory that the conduct of defendants raises the presumption of a fraudulent intention at the inception of the contract, and that, too, irrespective of any question of a remedy at law.

(Syllabus by the Court.)

*Error from District Court, Washita County, James R. Tolbert, Judge.*

Action by William H. Yarborough against Myrtle M. Spangler and others. Judgment for plaintiff. Defendants bring error. Affirmed.

*T. A. Edwards,* for plaintiffs in error, citing: 9 Current Law 454, and cases cited; 6 Cyc. 288-9, and cases cited; *Thompson v. Lanfair,* 127 Ga. 557; *Powers v. Powers* (Ky.) 39 S. W. 825; *Anderson v. Gaines* (Mo.) 57 S. W. 726; *Gardner v. Knight* (Ala.) 27 South. 298.

*Rutherford Brett* and *James W. Smith,* for defendant in error, citing: *Wyman v. Herard,* 9 Okla. 35; *Mosier v. Walters,* (Okla.) 87 Pac. 877; 7 Current Law 521, § 3; 18 Enc. Pl. & Pr. 769; *Peck v. Hoyt,* 39 Conn. 9; *Patterson v. Patterson,* 81 Iowa, 626; *Martin v. Martin,* 94 Kan. 295; *Reeder v. Reeder,* 89 Ky. 529; *Lane v. Lane* (Ky.) 50 S. W. 857; *Morgan v. Loomis,* 78 Wis. 594; *Hartstein v. Hartstein,* 74 Wis. 1; *Dixon v. Field,* 77 Wis. 439; *Blake v. Blake,* 65 Wis. 392; *Bresnahan v. Bresnahan,* 46 Wis. 385; *White v. Johnson,* 4 Wash. 113; *Grant v. Bell* (R. I.) 58 Atl. 951; *McClellan v. McClellan,* 176 Ill. 83; *Cooper v. Gum,* 152 Ill. 471; *Oard v. Oard,* 29 Ill. 46; *Kusch v. Kusch,* 143 Ill. 353; *Chadwick v. Chadwick,* 59 Mich. 87; *Lowman v. Crawford* (Va.) 40 S. E. 17; *McIntyre v. McIntyre* (Neb.) 106 N. W. 29; *Tomsick v. Tomsick* (Neb.) 110 N. W. 674.

TURNER, J. On April 15, 1908, William H. Yarborough, defendant in error, plaintiff below, sued Myrtle M. Spangler, L. B. Spangler, A. C. Spangler, and W. W. Spangler, plaintiffs in error, defendants below, in the district court of Washita county. The petition states substantially that plaintiff is aged, infirm, with mind impaired, and in poor health; that defendants are his sister and her children; that on October 24, 1905, he was the owner of a certain tract of land in said county, which was his homestead and which he described; that by means of false and fraudulent promises and statements made to him by defendants

which he relied on, believing the same to be true, he was induced by them to enter into a contract to convey to defendant Myrtle M. Spangler, his neice, his said homestead, which he did, in consideration of which defendants, in substance, therein agreed to provide him with a comfortable home for life, together with all necessary food, clothing, and medicines and the use of a horse and buggy, and, in consideration of his personal property which he turned over to them, to pay his debts; that, as soon as said contract was signed and said deed delivered, defendants assumed an entirely different attitude towards him, and wholly failed to comply with their contract, and are trying to sell said land with a view to leaving the country for parts unknown and leave him on charity; that he had no adequate remedy at law, and prayed that said deed and contract be canceled. After answer by defendants in effect denying fraud, admitting the execution of the contract and deed, and pleading performance of the contract on their part, there was trial to the court which resulted in a judgment for plaintiff canceling the deed as prayed, to reverse which defendants bring error to this court.

There were no findings of fact made by the trial court. The evidence discloses: That William H. Yarborough, plaintiff below, at the time of the execution of the contract and deed sought to be set aside was a single man, living alone on his homestead worth about $3,000, 77 years old, and very infirm. That defendant below L. B. Spangler was his sister, who lived near him on an adjoining farm owned by defendants, worth about four times as much. That the other defendants were her grown children. That, being unable to care for himself, and afraid to live alone, and anxious to be provided for during the remainder of his life, he went to defendants and entered into negotiations with them, which resulted in the making of the contract and deed sought to be set aside, but not before tearful urgings on the part of his sister. That as soon as the same was executed, which was part of one and the same transaction, and before its delivery, he required defendants to solemnly swear to carry out said contract.

That the deed was then delivered, and plaintiff moved his little one-room house and placed it near that of defendants and lived there, taking his meals with defendants. This was all the home provided for him under the contract. As to the raiment furnished him, the testimony discloses that he furnished the same himself as a result of his own labor, with the exception of a pair or two of drawers furnished him by defendants. He was toothless and complained much of the food, and asked to be permitted to grind the meat which he ate, which was refused. On arriving thus to live, he turned over to defendants all his personal property, consisting principally of a span of mules, worth some $300, which were sold by defendants, and his debts, to the amount of $175, paid, and the balance retained by them. No medicine of any kind was furnished him, although he was old, ill, and complaining, but he was permitted to use such as lay around the house. No horse and buggy was furnished him, as agreed, and no pretense made at doing so. Odd change was given him on two or three occasions by one of defendants, much as he would have thrown a bone to the family dog. The testimony discloses that defendants wholly failed to comply with their contract from its inception. Thus matters continued up to a short time prior to this suit, at which time defendants were making arrangements to sell their land and the land set forth in the deed, and intended to do so and leave the country, when plaintiff, fearing that he might be deserted, brought this suit for the concellation of said deed. The intent of this whole transaction is well characterized by the following testimony of the sister:

"Q. Are you all trying to sell out? A. We made some, but not much, effort. Q. Was it your intention to carry him with you? A. (No answer.)"

Notwithstanding the contention of defendants, in effect, that the judgment is unsupported by the evidence, we are of the opinion that the evidence justified the inference indulged by the trial court of an abandonment of the contract by defendants, one of whom was the grantee of the deed, and a fraudulent intent in en-

tering into it, and that the court did not err in setting the deed aside on the ground that it was fraudulently obtained. It has been frequently so held in cases of this character under similar circumstances. In *McClelland v. McClelland,* 176 Ill. 83, 51 N. E. 559, the court, after reviewing the evidence, said:

"The case therefore is one where an aged father and mother deed to their son their homestead farm in consideration of his furnishing them a home and support during the remainder of their lives, respectively. The evidence shows that he did not keep his agreement with them in this regard, but treated them with such unkindness as to force them to leave their home. Under the circumstances, it is well settled by the decisions of this court that the bill will lie to set aside the deed executed for such a consideration."

And, after citing *Frazier v. Miller,* 16 Ill. 48, where Miller and wife conveyed their real estate and personal property to Frazier, who had given a bond to support them for life, and had failed to perform his obligation, in which case it was held that Miller might proceed in equity to have the same rescinded, the court referring to that case, said:

"The ground, upon which the jurisdiction of equity was there sustained was that the circumstances justified the inference of an abandonment of the contract by Frazier, and the presumption of fraudulent intent in entering into the contract."

—and held that, inasmuch as the conduct of plaintiff in error gave rise to the presumption of an abandonment of his contract and a fraudulent intent in entering into it, plaintiff was entitled to the relief sought, and affirmed the judgment of the lower court.

In *Oard v. Oard,* 59 Ill. 46, the facts were that a father, upward of 70 years of age, induced by the promises of a son to support him and his wife in comfort during the remainder of their lives, conveyed his farm to his son's wife and his personal property to his son; that the son took possession of the farm, and by his continued ill treatment in about a year compelled his parents to leave and live with another child. It was there held that a bill would lie to rescind the contract, and the case of *Frazier v. Miller, supra,* cited with approval; the court saying:

"If the rescission of the contract cannot be referred to any other head of equity jurisdiction, it would be proper to presume that it was made in the first instance with a fraudulent intent."

In *Jones v. Neely,* 72 Ill. 449, where the facts were similar, it was held that the evidence justified the inference of an abandonment of the contract and of a fraudulent intent in entering into it.

Reviewing the leading cases on the subject, the court in *Stebbins v. Petty,* 209 Ill. 294, 70 N. E. 673, 101 Am. St. Rep. 243, says:

"It has been frequently held in this state that where a grantor conveys land, and the consideration is an agreement by the grantee to support, maintain, and care for the grantor during the remainder of his or her natural life, and the grantee neglects or refuses to comply with the contract, the grantor may in equity have a decree rescinding the contract and setting aside the deed and reinvesting the grantor with the title to the real estate. *Frazier v. Miller,* 16 Ill. 48; *Oard v. Oard,* 59 Ill. 46; *Jones v. Neely,* 72 Ill. 449; *Kusch v. Kusch,* 143 Ill. 353, 32 N. E. 267; *Cooper v. Gum,* 152 Ill. 471, 39 N. E. 267; *McClelland v. McClelland,* 176 Ill. 83, 51 N. E. 559; *Fabrice v. Von der Brelie,* 190 Ill. 460, 60 N. E. 835. A careful examination of these cases leads to the conclusion that the intervention of equity in such cases has been sanctioned in this state on the theory that the neglect or refusal of the grantee to comply with his contract raises a presumption that he did not intend to comply with it in the first instance, and that the contract was fraudulent in its inception; wherefore a court of equity will not permit him to enjoy the conveyance so obtained."

And so we say that as the facts in this case justified the inference of an abandonment of the contract by defendants, and the presumption that they did not intend to comply with it in the first instance, and therefore the contract and deed which were part of the same transaction were void at its inception, we are of the opinion that the trial court did not err in decreeing a cancellation of the deed, and we shall so hold. And that too although it is contended that, as the petition fails to state that defendants are insolvent, it does not appear that plaintiff was without a plain, ade-

quate, and complete remedy at law, and that evidence was not properly receivable in support of its averments over their objections. In cases of fraud such averment is unnecessary. In *Garretson v. Weatherspoon et al.,* 15 Okla. 473, 83 Pac. 415, this court said:

"In such a case the exercise of equitable jurisdiction is not dependent upon the inadequacy of the legal remedy but rescission and cancellation may be sought, irrespective of any question of a remedy at law. 16 Cyc. 291; *John Hancock Mutual Life Ins. Co. v. Dick,* 114 Mich. 337, 72 N. W. 179, 43 L. R. A. 566; *Ranney v. Warren,* 13 Hun. (N. Y.) 11; *Holden v. Hoyt,* 134 Mass. 181."

Finding no error in the record, the judgment of the trial court is affirmed.

All the Justices concur.